1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

JERAMIE D. HUBBLE,                          NO.  C12-876-JCC-JPD

9
                              Plaintiff,

10
        v.                                  REPORT AND
                                            RECOMMENDATION
11
CAROLYN W. COLVIN, Acting
Commissioner of Social Security,[1]
12
                              Defendant.
13

14          Plaintiff Jeramie D. Hubble appeals the final decision of the Commissioner of the

15   Social Security Administration ("Commissioner") which denied his applications for Disability

16   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17   of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18   administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19   the Commissioner's decision be REVERSED and REMANDED.

20

21

22          [1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social
     Security.  Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure,
23   Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this
     suit.  **The Clerk of Court is directed to update the docket accordingly, and the parties are**
24   **ordered to update the caption on all future filings with the Court.**

REPORT AND RECOMMENDATION - 1

1

I.       FACTS AND PROCEDURAL HISTORY

2       At the time of the administrative hearing, plaintiff was a twenty-seven year old man

3  with a high school education.  Administrative Record ("AR") at 38-39.  Plaintiff testified that

4  throughout his schooling he was enrolled in special education courses due to his Asperger's

5  Disorder.  AR at 39.  His past work experience includes employment as a lumber stacker at a

6  mill, and as a night security guard at the Snohomish County fairground.  AR at 49.  Plaintiff

7  was last gainfully employed by a temporary agency as a video game tester.  AR at 44.

8       Plaintiff has filed several claims for SSI payments and DIB, alleging disability based

9  upon affective disorders, Asperger's Disorder, and chronic abdominal disorder, among other

10  impairments.[2]  On March 21, 2008, plaintiff filed an application for concurrent benefits.  AR at

11  68-71.  These applications were denied initially on August 13, 2008, AR at 79-85, and upon

12  reconsideration on November 19, 2008.  AR at 70-71 (providing that "the prior determination

13  of 8/13/08 is affirmed.").  Plaintiff's Title II claim identified his relevant "date last insured" as

14  June 30, 2008.  AR at 70, 255.

15      Plaintiff then filed the instant concurrent applications on November 27, 2009, alleging

16  disability beginning on April 1, 2006.  AR at 15, 178-81, 191-94.[3]  On November 27, 2009, the

17  same date his claims were filed, his Title II claim was technically denied based on res judicata.

18  AR at 154-57.  Specifically, the November 27, 2009 Notice of Disapproved Claim provided

19  that plaintiff's "recent claim for disability benefits concerns the same issues decided when your

20  earlier claim was denied.  We decided then that you were not disabled . . . at any time on or

21

22       [2]The Court notes that throughout plaintiff's brief, plaintiff erroneously cites to one of
plaintiff's past applications for DIB dated April 3, 2008, rather than plaintiff's November 27,
23  2009 application.  Dkt. 14 at 2, 4 (citing AR at 173-75).
       [3] Plaintiff's protective filing date was October 26, 2009.  This is the filing date
24  referenced by the ALJ in his written decision.

before *June 30, 2009*, the date you last had enough credits under Social Security to be insured for disability benefits. A review of your latest claim and our records shows the facts are unchanged." AR at 154 (emphasis added). Plaintiff's Title XVI claim was denied initially on February 4, 2010, and upon reconsideration on June 22, 2010. AR at 15.

On July 11, 2011, plaintiff's newly retained counsel requested that plaintiff's prior Title II claim, filed on March 21, 2008, be reopened. Plaintiff's counsel explained that at the time that his March 21, 2008 Title II application was filed, "Social Security calculated his date last insured as June 30, 2008." AR at 158. However, plaintiff's most recent "Title 2 claim was technically denied due to res judicata. According to the claimant's records, his date last insured is actually June 30, 2009, so the doctrine of res judicata should not have been applied." AR at 158. Plaintiff asked that "his Title 2 claim be reopened because res judicata was improperly applied and his initial application was filed within the last four years." AR at 158.

Plaintiff also requested an administrative hearing, which was held on July 14, 2011. AR at 15-26. At the hearing, the ALJ denied plaintiff's request to adjudicate the Title II claim because plaintiff did not appeal the November 27, 2009 initial denial. Specifically, the ALJ stated that "there was no appeal from the initial determination and the time for appeal has lapsed . . . the only claim I have before me is a Title XVI claim, the Title II claim was denied at the district office on initial application." AR at 37. The ALJ further provided that "the date the order was actually issued November 27, 2009 and that is Exhibit 18B, that was not appealed. And so basically that became a final determination, your client is bound by that . . . and as a consequence I will not reopen the prior Title XVI application. And I will apply collateral estoppels (sic) to that." AR at 38. The ALJ did not develop testimony related to the possibility of good cause to reopen the prior Title II claim based upon the inapplicability of res

REPORT AND RECOMMENDATION - 3

judicata, or good cause regarding plaintiff's failure to timely appeal the November 27, 2009 initial denial of his Title II claim.

With respect to plaintiff's Title XVI claim, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 15-25. In the written decision, the ALJ also restated his reasons for denying plaintiff's motion to reopen his prior Title II application. The ALJ noted that "while the claimant did file a concurrent [Title II] application, the Title II application was denied in an initial determination dated November 27, 2009 on res judicata grounds. There was no appeal from this order, hence, it is considered to be a final order." AR at 15. Thus, the ALJ found that there was "a final decision on the Title II application finding the claimant to be not disabled through June 30, 2009[.]" AR at 15.[4]

Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On June 26, 2012, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 6.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by

---

[4] This decision also influenced the ALJ's decision not to reopen plaintiff's prior SSI application, with a prior filing date of January 26, 2009, because the ALJ noted that "the November 27, 2009 order regarding the Title II application found that the claimant would not be disabled through June 30, 2009, which is after the filing date of the prior SSI application." AR at 15.

1    substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

2    Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

3    such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

4    *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

5    (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

6    medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*,

7    53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a

8    whole, it may neither reweigh the evidence nor substitute its judgment for that of the

9    Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is

10   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

11   must be upheld. *Id.*

12          The Court may direct an award of benefits where "the record has been fully developed

13   and further administrative proceedings would serve no useful purpose." *McCartey v.*

14   *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

15   (9th Cir. 1996)). The Court may find that this occurs when:

16          (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
            claimant's evidence; (2) there are no outstanding issues that must be resolved
17          before a determination of disability can be made; and (3) it is clear from the
            record that the ALJ would be required to find the claimant disabled if he
18          considered the claimant's evidence.

19   *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

20   erroneously rejected evidence may be credited when all three elements are met).

21                        IV.    EVALUATING DISABILITY

22          As the claimant, Mr. Hubble bears the burden of proving that he is disabled within the

23   meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

24   Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in

REPORT AND RECOMMENDATION - 5

1   any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

2   expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

3   423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are

4   of such severity that he is unable to do his previous work, and cannot, considering his age,

5   education, and work experience, engage in any other substantial gainful activity existing in the

6   national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

7   99 (9th Cir. 1999).

8        The Commissioner has established a five step sequential evaluation process for

9   determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

10  404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

11  step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at

12  any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step

13  one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R.

14  §§ 404.1520(b), 416.920(b).[5]  If he is, disability benefits are denied.  If he is not, the

15  Commissioner proceeds to step two.  At step two, the claimant must establish that he has one

16  or more medically severe impairments, or combination of impairments, that limit his physical

17  or mental ability to do basic work activities.  If the claimant does not have such impairments,

18  he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

19  impairment, the Commissioner moves to step three to determine whether the impairment meets

20  or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

21

22
_____

23        [5] Substantial gainful activity is work activity that is both substantial, i.e., involves
    significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. §

24  404.1572.

416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On August 26, 2011, the ALJ issued a decision finding the following:

1.    The claimant has not engaged in substantial gainful activity since October 26, 2009, the application date.

2.    The claimant has the following severe impairments: Affective Disorder; Personality Disorder/Asperger's Disorder; Chronic Abdominal Disorder.

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is able to understand, remember, and carry out simple and detailed instructions or tasks generally required by occupations with an SVP of 1 or 2; he is able to work in the

REPORT AND RECOMMENDATION - 7

proximity of 20 or less people; he is able to interact on an occasional basis with the general public, co-workers, or supervisors in situations generally consistent with occupations of an SVP of 1 or 2.

5.    The claimant has no past relevant work.

6.    The claimant was born on XXXXX, 1984 and was 25 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[6]

7.    The claimant has at least a high school education and is able to communicate in English.

8.    Transferability of job skills is not an issue because the claimant does not have past relevant work.

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.   The claimant has not been under a disability, as defined in the Social Security Act, since October 26, 2009, the date the application was filed.

AR at 17-26.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.    Did the doctrine of res judicata bar the Commissioner from considering plaintiff's Title II claim with a date last insured of June 30, 2009, or does good cause exist to review plaintiff's Title II claim despite plaintiff's failure to timely appeal the initial denial?

2.    Did the ALJ err at step two by failing to make determinations as to severity of all of plaintiff's medically diagnosed impairments?

3.    Did the ALJ err in assessing plaintiff's credibility?

4.    Did the ALJ err in evaluating the medical opinion evidence?

5.    Did the ALJ err in assessing plaintiff's Residual Functional Capacity ("RFC")?

6.    Did the ALJ err in evaluating the lay witness testimony of Kimberly Bethel?

Dkt. 14 at 2.

---

[6] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 8

1

VII.    DISCUSSION

2    A.    The ALJ Erred by Denying Plaintiff's Title II Claim Based Upon Res Judicata

3    Plaintiff asserts that the Commissioner erred in applying res judicata to his Title II

4    claim, which ultimately caused there to be no adjudication of the period prior to his date last

5    insured of June 30, 2009.  Dkt. 14 at 10.  Specifically, plaintiff argues that res judicata may be

6    grounds for dismissing a hearing request when SSA has made a prior final determination on

7    the same facts and issues.  *Id*. (citing 20 C.F.R. § 404.957(c)(1)).  However, res judicata may

8    not apply if new facts in a subsequent application demonstrate that there may have been

9    inadequate grounds to support a determination.  *Id*. (citing *Taylor v. Heckler*, 765 F.2d 872,

10    876 (9th Cir. 1985)).

11    Plaintiff asserts that in this case, "the November 27, 2009 letter technically denying Mr.

12    Hubble's November 27, 2009 application . . . incorrectly stated that a November 2008

13    reconsideration denial served as res judicata for claimant's date last insured of June 30, 2009."

14    *Id*. at 10-11 (citing AR at 70, 188, 191-94).  Contrary to this representation, however, "the

15    November 2008 reconsideration denial applied to a date last insured of June 30, 2008.  Further,

16    there was no consideration of the new evidence which would be obtained in his November 27,

17    2009 application and therefore, no true adjudication of the period from November 2008 to

18    October 2009."  *Id*. at 11.  Plaintiff asserts that while the issue of disability is common between

19    the 2008 and 2009 claims, "the time periods involved are not," and therefore the application of

20    res judicata was erroneous.  *Id.*

21    Finally, plaintiff asserts that his counsel established good cause to reopen the Title II

22    claim and excuse his failure to timely appeal the initial denial "because the mistake could have

23    misled claimant, there existed good cause for ALJ Araki to take jurisdiction over Mr. Hubble's

24    Title II claim at least for the unadjudicated period of November 20, 2008 to the time of the

REPORT AND RECOMMENDATION - 9

1   decision." *Id*. at 11-12.  Plaintiff asks the Court to remand this case for further development of

2   the record, as there has been no consideration of plaintiff's functioning prior to October 26,

3   2009.

4           The Commissioner does not challenge plaintiff's contention that the Commissioner

5   erred by denying plaintiff's Title II claim based on res judicata.  The Commissioner adopts the

6   plaintiff's statement of the case in full, and concedes that "Plaintiff is correct that there was an

7   unadjudicated period, as to his Title II claim, from November 2008 through October 2009."

8   Dkt. 15 at 4.  Nevertheless, the Commissioner argues that "the same evidence applicable to that

9   claim was applicable to his Title XVI claim, and was addressed by the ALJ in his review of the

10  medical evidence.  It follows that, if the ALJ's decision as to the Title XVI claim was proper,

11  the same conclusion would apply with regard to Plaintiff's Title II claim." *Id*.  The

12  Commissioner asserts that as a result, "any error here was harmless, because it did not affect

13  the ultimate disability determination." *Id.* at 4-5 (citing *Stout v. Comm'r Soc. Sec. Admin*., 454

14  F.3d 1050, 1055-56 (9th Cir. 2006)).

15          The Commissioner does not cite to any authority, and the Court is aware of none,

16  holding that the Commissioner's failure to adjudicate a relevant period can constitute harmless

17  error as long as the ALJ ultimately found the plaintiff not disabled under a different title of the

18  Social Security Act.  As the plaintiff points out, it is undisputed that the Commissioner's

19  November 27, 2009 Initial Denial letter incorrectly stated that the November 2008

20  reconsideration denial served as res judicata for plaintiff's date last insured of June 30, 2009.

21  As a result, there was no consideration of plaintiff's new evidence provided with his

22  application, and no adjudication of the period from November 2008 to October 2009.  Indeed,

23  the ALJ expressly stated that his written decision addressed the time period from October 26,

24

REPORT AND RECOMMENDATION - 10

2009 to the date of the ALJ's decision, and therefore no adjudication of the period from

November 2008 to October 2009 has been undertaken.

Moreover, Social Security Administration Acquiescence Ruling ("AR") 97-4(9)

provides as follows:

> Under SSA policy, if a determination or decision on a disability claim has become
> final, the Agency may apply administrative res judicata with respect to a
> subsequent disability claim under the same title of the Act if the same parties,
> facts and issues are involved in both the prior and subsequent claims. *However, if
> the subsequent claim involves deciding whether the claimant is disabled during a
> period that was not adjudicated in the final determination or decision on the prior
> claim, SSA considers the issue of disability with respect to the unadjudicated
> period to be a new issue that prevents the application of administrative res
> judicata.* Thus, when adjudicating a subsequent disability claim involving an
> unadjudicated period, SSA considers the facts and issues de novo in determining
> disability with respect to the unadjudicated period. SSA does not adopt findings
> from the final determination or decision on the prior disability claim in
> determining whether the claimant is disabled with respect to the unadjudicated
> period. Further, under SSA policy, a prior final determination or decision that a
> claimant is not disabled does not give rise to any presumption of a continuing
> condition of nondisability. *When a subsequent claim involves an unadjudicated
> period, the determination or decision as to whether a claimant is disabled with
> respect to that period is made on a neutral basis, without any inference or
> presumption that a claimant remains "not disabled."*

AR 97-4(9) (emphasis added). Especially in light of the Commissioner's own policy regarding

proper treatment of an unadjudicated period, the Court is not persuaded by the Commissioner's

unsupported argument that this error should be deemed harmless.

Finally, the Court agrees with plaintiff that the ALJ should have exercised his

discretion to determine whether good cause existed to support plaintiff's untimely request to

reopen his Title II claim. The statutory factors establishing "good cause for missing the

deadline to request review" include consideration of whether an action by the Commissioner

misled the claimant. *See* 20 C.F.R. § 404.911(2) ("Whether our action misled you"). Where,

as here, plaintiff was not yet represented by counsel at the time he received the November 27,

2009 Initial Disapproval Notice, the Court finds that plaintiff could have reasonably been

REPORT AND RECOMMENDATION - 11

1    misled as to whether res judicata barred the Commissioner's consideration of his Title II claim.

2    Thus, although plaintiff failed to timely request review of his Title II claim until his retained

3    counsel requested that his prior Title II claim be reopened, the Commissioner's error was

4    promptly pointed out by plaintiff's counsel at that time.  AR at 158.

5          Accordingly, this matter should be remanded so that the record may be further

6    developed, and to allow the Commissioner to consider plaintiff's Title II claim with a date last

7    insured of June 30, 2009.  As discussed below, because the Court finds that the ALJ also erred

8    in evaluating plaintiff's claims under Title XVI, the ALJ shall conduct a *de novo* hearing.

9          B.    <u>The ALJ Erred at Step Two</u>

10         At step two, a claimant must make a threshold showing that his medically determinable

11   impairments significantly limit his ability to perform basic work activities.  *See Bowen v.*

12   *Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work

13   activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§

14   404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not

15   severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

16   effect on an individual's ability to work.'"  *Smolen*, 80 F.3d at 1290 (quoting Social Security

17   Ruling (SSR) 85-28).  "[T]he step two inquiry is a de minimis screening device to dispose of

18   groundless claims."  *Id*. (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

19         To establish the existence of a medically determinable impairment, the claimant must

20   provide medical evidence consisting of "signs – the results of 'medically acceptable clinical

21   diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or

22   description of his physical or mental impairment.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th

23   Cir. 2005).  A claimant's own statement of symptoms alone is *not* enough to establish a

24   medically determinable impairment.  *See* 20 C.F.R. §§ 404.1508, 416.908.

REPORT AND RECOMMENDATION - 12

1       In this case, the ALJ's findings at step two were limited to the following assertion: "The

2  claimant has the following severe impairments: Affective Disorder; Personality

3  Disorder/Asperger's Disorder; Chronic Abdominal Disorder (20 CFR 416.920(c))."  AR at 17.

4  The ALJ did not include any further discussion regarding his analysis or findings at step two.

5       Plaintiff contends that the ALJ erred in evaluating his Title XVI claim at step two

6  by failing to address whether plaintiff had other medically determinable impairments that the

7  ALJ did not consider severe.  Specifically, plaintiff asserts that "even if an impairment is

8  determined to be non-severe, the ALJ must address how the combination of both severe and

9  non-severe impairments affect the claimant's RFC."  Dkt. 14 at 12 (citing *Smolen v. Chater*, 80

10  F.3d 1273, 1290 (9th Cir. 1996)).  Here, although the ALJ found that plaintiff's severe

11  impairments included affective disorder, personality disorder/Asperger's disorder, and chronic

12  abdominal disorder, plaintiff asserts that the ALJ's finding ignores evidence of his diagnosed

13  impairments of post-traumatic stress disorder ("PTSD"), attention deficit disorder ("ADHD"),

14  insomnia, schizoid personality disorder, and anxiety disorder.  *Id.* (citing AR at 444-46, 484,

15  516-17, 532, 544, 617, 699-700, 706-07).  Thus, plaintiff asserts that "the ALJ has failed at

16  step 2 in undertaking the proper evaluation of Mr. Hubble's medical impairments.  Because

17  these were not adequately considered, the ALJ's RFC is not accurate."  *Id*. at 13.

18       The Commissioner responds that "when an ALJ finds a severe impairment at step two

19  and does not screen out Plaintiff's claim, there is no need to consider the severity of Plaintiff's

20  impairments.  Subsequent steps in the evaluation process are performed to determine Plaintiff's

21  work related limitations from all impairments, whether or not they were found severe."  Dkt.

22  15 at 5 (citing SSR 96-8p).  Thus, the Commissioner asserts that "any error in designating

23  specific impairments severe did not prejudice Plaintiff at step two, because step two was

24  resolved in his favor."  *Id*. (citing *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)).

REPORT AND RECOMMENDATION - 13

1    Because "the ALJ's [RFC] finding adequately captured all of Plaintiff's reliability evidenced

2    work related limitations, regardless of what impairments or combinations might be considered

3    severe," the Commissioner asserts that "there was no error in finding any particular mental

4    impairment non-severe." *Id.*

5           Plaintiff replies that although the Commissioner cites to the Ninth Circuit's decision in

6    *Burch* as supporting his argument that any error at step two was harmless because the RFC

7    finding "captured all of plaintiff's work related limitations," *Burch* is distinguishable from this

8    case. Dkt. 16 at 4. Specifically, "in *Burch*, plaintiff alleged error at step 2 because the ALJ did

9    not consider her obesity . . . The court found no error because the record did not support that

10   Ms. Burch's obesity caused additional limitations." *Id*. By contrast, in this case plaintiff "has

11   limitations for which the ALJ did not account in his RFC. Some of these limitations arise from

12   those impairments the ALJ does not address." *Id*. Plaintiff asserts that the ALJ's RFC

13   assessment in this case does not account for limitations arising from plaintiff's diagnosed

14   ADHD, anxiety, PTSD, pain disorder, and schizoid personality disorder. *Id*.

15          The Court is unconvinced by the Commissioner argument that the ALJ's failure to

16   discuss plaintiff's medically determinable impairments at step two was harmless because the

17   impairments at issue were either non-severe, or were presumably accounted for in the ALJ's

18   RFC assessment. Such an assertion is unverifiable, in light of the ALJ's inadequate analysis

19   and failure to make any express mention of these diagnoses in his written decision.

20          As plaintiff points out, the Commissioner's reliance upon *Burch* is also misplaced.

21   Unlike in *Burch*, it is not clear that no additional limitations result from the impairments the

22   ALJ failed to expressly acknowledge. Moreover, the general proposition that failures at step

23   two may be harmless if the ALJ discusses the impairments and assesses limitations as a result

24   of that impairment simply underscores the significance of the error in this case. Here, the ALJ

REPORT AND RECOMMENDATION - 14

1   failed to adequately discuss the impairments at issue, and therefore a determination as to

2   whether plaintiff's limitations were fully assessed in connection with these impairments is

3   impossible to ascertain.

4           Finally, the fact that the ALJ found the existence of severe impairments at step two, and

5   so did not "screen out" plaintiff's application, does not establish that any error at step two was

6   harmless.  The ALJ's failure to adequately analyze plaintiff's impairments at step two was not

7   rendered harmless simply because the ALJ successfully identified a few severe impairment and

8   proceeded to analyze subsequent steps.  Failing to address or even identify significant

9   impairments likely narrowed the scope of the ALJ's subsequent analysis, and likely led to

10  diminished consideration of plaintiff's testimony and affected the ability to determine whether

11  plaintiff is disabled.  The ALJ's errors at step two were not harmless.

12          Because the ALJ's errors at step two likely affected the remainder of the ALJ's

13  analysis, the Court will remand for a *de novo* hearing.  On remand, the ALJ shall properly

14  evaluate and document his analysis of plaintiff's medically determinable impairments.  The

15  ALJ shall also reassess plaintiff's RFC, because the ALJ's failure to discuss these alleged

16  impairments prevents the Court from determining, on the record as it currently exists, whether

17  the ALJ's RFC assessment is adequate.  Finally, it is unnecessary to consider plaintiff's

18  remaining assignments of error.[7]

19

20          [7] The Court does note, however, that the ALJ's rejection of plaintiff's mother's
    opinions because "the statements of Ms. Bethel are likely biased in favor of the claimant
21  receiving disability benefits secondary to her relationship with the claimant" also constituted
    legal error.  AR at 22.  The Ninth Circuit has held that an ALJ cannot dismiss the opinion of a
22  family member on the basis of bias simply by virtue of his or her relationship with the
    claimant.  *See Smolen*, 80 F.3d at 1289 (finding that the ALJ erred when he rejected the
23  testimonies of family members on bias grounds).  Accordingly, the lay witness testimony
    should be evaluated anew, and the ALJ is directed not to repeat this error on remand.
24

REPORT AND RECOMMENDATION - 15

1

VIII.   CONCLUSION

2

For the foregoing reasons, the Court recommends that this case be REVERSED and

3

REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

4

instructions.   A proposed order accompanies this Report and Recommendation.

5

DATED this 29th day of March, 2013.

6

7

*James P. Donohue*

JAMES P. DONOHUE

8

United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24